# EXHIBIT A

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

| | |
|---|---|
| ALLISON CORNIA, <br><br>         Plaintiff, <br><br> v. <br><br> CROSSOVER MARKET LLC, <br><br>         Defendant. | No. <br><br> COMPLAINT |

Plaintiff Allison Cornia (hereinafter "Plaintiff" or "Ms. Cornia"), by and through her undersigned counsel, hereby alleges as follows:

## I. PARTIES

1. Plaintiff is an individual residing in King County, Washington.

2. Defendant Crossover Market LLC (hereinafter "Defendant" or "Crossover") is, and at all times relevant hereto was, a corporation duly organized under the laws of the State of Washington, with its principal place of business in King County, Washington.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction over the parties and this matter under RCW 2.08.010.

4. Venue is appropriate in King County under RCW 4.12.020.

COMPLAINT – Page 1

## III. FACTS

5. Ms. Cornia was sexually harassed by her supervisor in front of her peers, terminated from her team when she reported the harassment to human resources, passed over for a promotion that went to a less-qualified man, and terminated from her employment three weeks after contacting her employer regarding the misconduct.

6. Prior to being discriminated and retaliated against by Defendant, Ms. Cornia had earned impressive credentials and built up considerable experience during her decades-long marketing career.

7. Ms. Cornia's academic record speaks for itself. She earned her Bachelor of Arts from Smith College, an elite women's college in Northampton, Massachusetts. She subsequently earned a Master's in Business Administration from Georgia State University, and her Ph.D. in Business and Marketing from Arizona State University.

8. Over the course of a marketing career spanning more than two decades, Ms. Cornia built an impressive record of experience in the field, including five years as a senior marketing executive at Microsoft, and several years as the Chief Marketing Officer ("CMO") for numerous other large, successful companies before she began working for Defendant.

9. Ms. Cornia began working for Defendant in March 2018 as the Vice President ("VP") of Marketing.

10. Defendant Crossover is a portfolio company of ESW Capital, LLC ("ESW"), a holding company that owns a broad portfolio of other entities.

11. Even though Ms. Cornia was being paid by Crossover, her role was characterized as the VP of Marketing for another ESW portfolio company, Think3. To avoid confusion, Ms. Cornia's employer, the Defendant here, is referred to as the "Company."

COMPLAINT – Page 2

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

## A. Ms. Cornia is Denied an Advancement Opportunity in Favor of a Less-qualified Man

12. Despite Ms. Cornia's qualifications and exceptional performance in her role as VP of Marketing, in early 2020 she was informed by CEO Andrew Tryba that a man with nowhere near Ms. Cornia's credentials, professional background, or qualifications, had been hired for the position of CMO.

13. Based on Ms. Cornia's extensive training and impressive academic credentials, her past work experience as the CMO of other large, successful companies, and her exceptional performance as the VP of Marketing while at the Company, she was undeniably qualified for the CMO position. Ms. Cornia had been the head of marketing for two years, and she had demonstrated her excellence in the position.

14. Nevertheless, Ms. Cornia was never even notified that the Company was seeking a CMO, much less given the opportunity to apply or interview for the CMO position, or offered the position herself.

15. In apparent recognition of how counterintuitive it was for the Company to hire someone objectively less qualified than Ms. Cornia, and to completely disregard Ms. Cornia's undeniable qualifications for the position, Mr. Tryba told Ms. Cornia that he expected that she would have "some mixed emotions on not having the opportunity to go for that position (which was never really posted)."

16. The man who was hired for the CMO position was paid more than double what Ms. Cornia was making in her role as VP of Marketing.

17. A substantial factor in the Company's decision not to offer Ms. Cornia the position or the opportunity to interview for the position was Ms. Cornia's gender.

18. By denying Ms. Cornia the opportunity to advance by failing to offer her even the chance to be considered for the position, the Company caused Ms. Cornia substantial lost future earnings for years into the future.

COMPLAINT – Page 3

**B.   Ms. Cornia's Male Supervisor Targets Her With Verbal and Sexual Harassment**

19.   All individuals who work for the Company work remotely, distributed in varying locations around the globe. For this reason, all meetings and communication between workers take place remotely.

20.   In the summer of 2019, Ms. Cornia was working on the renewal sales team, which was managed by the Company's Senior Vice President ("SVP") of Renewals, Jeremy Swartz.

21.   Mr. Swartz was known for his inappropriate and offensive behavior at work. He would often make comments during work meetings that contained overt sexual references and sexual innuendo targeted at individual women working for the teams he managed—conduct that would have led to disciplinary action, including termination, at most companies.

22.   In or around August 2019, Mr. Swartz was hosting a video conference call attended by Ms. Cornia and several others on her team.

23.   While participants were still signing on to the video conference call, Ms. Cornia had joined the call, but had not yet turned on her video camera. Because of this, a default professional photo depicting Ms. Cornia was visible to the other participants of the call.

24.   When Mr. Swartz saw the picture of Ms. Cornia, he asked her whether that picture was the same one that she uses on her "Tinder profile."

25.   Tinder is an online social media application used for casual sexual encounters. A user views pictures of other users, and swipes the other users' pictures to the left if the user does not find them physically attractive, but will swipe to the right if the user does find them physically attractive. If two users both swipe right on each other's pictures, then a virtual line of communication is established, and the two users are free to arrange an encounter. Tinder is commonly referred to as the "hook-up app" because users'

COMPLAINT – Page 4

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

primary goal is to connect with other users for the sole purpose of arranging such casual sexual encounters, in contrast to dating websites whereby users can meet other users with the intention of finding a partner with long-term compatibility.

26. Mr. Swartz knew that his inappropriate question was audible to all of the participants on the call, and several men laughed upon hearing it.

27. Ms. Cornia immediately objected to Mr. Swartz's behavior, informing him that she was embarrassed, humiliated, and offended.

28. Because of Tinder's association with promiscuity and casual sexual encounters, Mr. Swartz's harassment would have been offensive and hurtful to any individual, especially any member of the team he was supervising. But, Mr. Swartz's sexist insult was even more offensive because Ms. Cornia was in a committed relationship with her now-fiancé, so Mr. Swartz's sexually suggestive comment also suggested infidelity.

29. Mr. Swartz never targeted his sexually suggestive comments or questions at men.

30. Mr. Swartz's lewd comment was part of his regular pattern and practice of gender discrimination and the hostile work environment he and the Company created and maintained; he frequently directed sexual jokes at some of the few other women who worked for the Company, also suggesting that they were promiscuous and cheating on their partners. These comments and jokes were made in circumstances where Mr. Swartz knew the targeted woman's peers could hear, and they were designed to maximize the discomfort and embarrassment of the targeted women.

31. To add insult to injury, during the same call in which Mr. Swartz asked his sexist question of Ms. Cornia, Mr. Swartz played a video clip depicting an individual using sexual innuendo while pitching a product, which caused Ms. Cornia to suffer further offense and humiliation.

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

32. After these incidents, Ms. Cornia reported Mr. Swartz's conduct to the Company's sole Human Resources ("HR") representative, Lauren Hein.

33. Ms. Hein later contacted Mr. Tryba, who as CEO was also Mr. Swartz's supervisor. Mr. Tryba spoke to Mr. Swartz about the incident, and no disciplinary action was taken.

34. Soon after Ms. Cornia had confronted Mr. Swartz about his harassing comment, and reported the comment to HR, Mr. Swartz retaliated against Ms. Cornia by firing her from his renewals team.

35. Although Mr. Swartz claimed that his firing of Ms. Cornia was the result of there no longer being a need for the marketing function provided by her role, it became clear that Mr. Swartz's pretextual justification was false when, shortly after firing Ms. Cornia, he hired someone to fill that same role. If Ms. Cornia has not stood up for herself and reported the harassment to HR, she would not have been fired from the renewals team.

36. Because of her demonstrated success and exceptional performance in her marketing role, Ms. Cornia was able to start working for another team within the Company, and continued there until the Company permanently terminated her.

37. Mr. Swartz's sexist conduct and harassment of women was consistent with the male-dominated culture of the Company, where nearly all of those in leadership positions are male, and where women are consistently treated with less respect than their male counterparts.

C. **The Company Mischaracterizes Ms. Cornia as an "Independent Contractor" and Improperly Withholds Her Wages**

38. The Company's business model is to mischaracterize many of its employees as "independent contractors" so as to avoid the obligations and employee-protections that come with the employee-employer relationship.

COMPLAINT – Page 6

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

39. For example, many individuals work full time for the Company, are paid by the hour, are required to be available during specific hours, have bosses to whom they report, and have job titles such as "Vice President" and "Senior Vice President," yet are still treated as contract workers and given no sick leave, paid time off, or benefits of any kind.

40. The Company spies on its employees constantly by tracking mouse clicks and keyboard strokes, and by taking screenshots of employees through their computers while they work from home.

41. In essence, the Company has created what has been described as a "global technology sweatshop."

42. Through these practices, the Company controls and directs the work of its workers with regard to the results to be achieved, and with regard to the details by which those results are achieved. Specifically, during Ms. Cornia's time working for the Company, her work too was controlled by Company supervisors with regard to the results to be achieved and the details by which those results were achieved.

43. Ms. Cornia was paid by the hour, depended on the Company for her entire economic livelihood while working for the Company, and by no means was in business for herself.

44. Despite being improperly mischaracterized as an "independent contractor," Ms. Cornia was in reality an employee of the Company.

45. In connection with her mischaracterization as an "independent contractor," Ms. Cornia was never paid for overtime she worked; her compensation was strictly commensurate with a 40-hour work week, regardless of how many hours she actually worked.

46. Ms. Cornia often worked more than 40 hours in a given week.

COMPLAINT – Page 7

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

47. As a result, the Company failed to pay Ms. Cornia for all of the time she spent working, as required by Washington law.

48. Because of the Company's strategic approach to avoid treating its employees as employees, and its attempt to avoid the obligations that come with being an employer, it provides no HR training to individuals who work for the company (such as how to prevent sexual harassment), and offers no guidance on what an individual should do if the individual is the target of sexual harassment.

### D. In Retaliation for Contacting the Company and Reporting Its Discrimination Against Her, Ms. Cornia is Permanently Terminated

49. On January 22, 2021, Ms. Cornia, through undersigned counsel, contacted the Company regarding her potential legal claims for gender discrimination, retaliation, and wage withholding.

50. Approximately three weeks later, on February 14, 2021, and before responding to her letter regarding the Company's misconduct, the Company retaliated against Ms. Cornia by permanently firing her.

51. Because of the Company's retaliation against Ms. Cornia, she has suffered damages including but not limited to lost future earnings, reputational damages, and emotional distress damages, amongst other forms of damages, all in amounts to be proven at trial.

### E. Ms. Cornia Has Suffered Substantial Damages as a Result of the Company's Misconduct

52. The Company's misconduct described above has caused Ms. Cornia to suffer substantial damages.

53. By discriminating against Ms. Cornia on the basis of her gender in denying her an advancement opportunity in favor of a less-qualified man, the Company prevented Ms. Cornia from realizing substantial additional annual earnings for years into the future.

COMPLAINT – Page 8

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

54. By failing to prevent Mr. Swartz from retaliating against Ms. Cornia by firing her from his team; permitting him to remain employed by the Company after such retaliation; and then by the Company's permanently firing Ms. Cornia in retaliation for her opposition to the Company's discrimination against her, the Company's has caused Ms. Cornia significant damages in an amount to be proven at trial.

55. By mischaracterizing Ms. Cornia as an independent contractor, the Company caused Ms. Cornia to suffer damages in amount to proven at trial, including but not limited to damages in the form of unpaid overtime.

56. Mr. Swartz's sexual harassment of Ms. Cornia, which took place while he was acting in his Company role as Ms. Cornia's supervisor, and the hostile work environment at the Company caused Ms. Cornia to suffer damages to be proven at trial, including but not limited to emotional distress damages.

57. In sum, Defendant's misconduct has caused Ms. Cornia to suffer millions of dollars in damages, as well as extensive non-economic damages.

## IV. CAUSES OF ACTION

**First Cause of Action:**
**Violation of the Washington Law Against Discrimination**
**(Gender Discrimination)**

58. Plaintiff incorporates by reference, as though fully set forth herein, all prior paragraphs of this Complaint.

59. Defendant is subject to the provisions of the Washington Law Against Discrimination ("WLAD"), Chapter 49.60 RCW, and court rulings interpreting the WLAD. The WLAD prohibits discrimination on the basis of gender, which includes sexual harassment.

60. At all times relevant hereto, Ms. Cornia was qualified to perform the essential functions of her position and her job performance was equal to or greater than the performance of similarly situated male employees/workers.

COMPLAINT – Page 9

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

61. By and through the acts and omissions alleged herein, the Company discriminated against Ms. Cornia because of her gender by failing to give her the opportunity to apply for the promotion to CMO, and failing to offer her the role of CMO, and instead hiring an objectively less-experienced and less-qualified man for that position.

62. By and through the acts and omissions alleged herein, the Company discriminated against Ms. Cornia through Mr. Swartz's sexual harassment of Ms. Cornia. The Company failed to prevent this discrimination, and/or to stop or remedy it when Ms. Cornia reported it to Company HR.

63. As a direct and proximate cause of the Company's acts and omissions alleged herein, Ms. Cornia has been damaged in such kinds and amounts as will be proven at trial.

64. Ms. Cornia has also suffered substantial non-economic damages as a result of the Company's unlawful conduct. These damages include but are not limited to substantial reputational damage in such kinds and amounts as will be proven at trial. They also include but are not limited to emotional distress damages in amounts to be proven at trial.

65. Ms. Cornia is also entitled to recover attorneys' fees and costs under the WLAD.

**Second Cause of Action:**
**Violation of the WLAD**
**(Retaliation)**

66. Plaintiff incorporates by reference, as though fully set forth herein, all prior paragraphs of this Complaint.

67. The WLAD prohibits retaliation against an employee for making a complaint of, or reporting, gender discrimination.

68. Ms. Cornia reported Mr. Swartz's gender discrimination to Company HR. Ms. Cornia was retaliated against for reporting Mr. Swartz's gender discrimination to HR.

COMPLAINT – Page 10

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

69. The Company failed to prevent, stop, or remedy this retaliation. In fact, by informing Mr. Swartz that Ms. Cornia had reported his misconduct to HR, and by failing to take any disciplinary or remedial measures, the Company enabled Mr. Swartz to carry out his retaliation against Ms. Cornia.

70. Ms. Cornia also reported the Company's gender discrimination by sending a letter to the Company regarding its denial of her opportunity to apply, or be considered for, the position of CMO, which went to an objectively less-qualified man. In response to this letter, the Company retaliated against Ms. Cornia by firing her.

71. As a direct and proximate cause of the Company's acts and omissions alleged herein, Ms. Cornia has been damaged in such kinds and amounts as will be proven at trial, including substantial economic damages.

72. Ms. Cornia has also suffered substantial non-economic damages as a result of the Company's unlawful conduct. These damages include but are not limited to substantial reputational damage in such kinds and amounts as will be proven at trial. They also include but are not limited to emotional distress damages in amounts to be proven at trial.

73. Ms. Cornia is also entitled to recover attorneys' fees and costs under the WLAD.

**Third Cause of Action:**
**Violation of the WLAD**
**(Hostile Work Environment)**

74. Plaintiff incorporates by reference, as though fully set forth herein, all prior paragraphs of this Complaint.

75. The WLAD prohibits employers from creating a hostile work environment or permitting one to exist.

76. The Company created, maintained, perpetuated, and/or permitted a hostile work environment to exist, specifically in relation to the sexist and harassing conduct of Mr. Swartz. The Company did not take sufficient action to stop or remedy this hostile

COMPLAINT – Page 11

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

work environment. Rather, the Company exacerbated this hostile work environment by enabling Mr. Swartz to continue in his conduct even after Ms. Cornia reported the sexual harassment, and by retaliating against Ms. Cornia for complaining about being the victim of gender discrimination through sexual harassment and denied the opportunity to advance.

77. As a direct and proximate result of the Company's acts and omissions alleged herein, Ms. Cornia has been damaged in such kinds and amounts as will be proven at trial including substantial economic damages.

78. Ms. Cornia has also suffered substantial non-economic damages as a result of the Company's unlawful conduct. These damages include but are not limited to emotional distress damages in amounts to be proven at trial.

79. Ms. Cornia is also entitled to recover attorneys' fees and costs under the WLAD.

### Fourth Cause of Action:
### Violation of RCW 49.46 and 49.52

80. Plaintiff incorporates by reference, as though fully set forth herein, all prior paragraphs of this Complaint.

81. The Company mischaracterized Ms. Cornia as an independent contractor, when in reality she was an employee of the Company.

82. Ms. Cornia regularly worked more than 40 hours per week, but was never paid or compensated for her work beyond those 40 hours, in violation of RCW 49.46.130 and RCW 49.52.050.

83. As a direct and proximate result of the Company's acts and omissions alleged herein, Ms. Cornia has been damaged in such kinds and amounts as will be proven at trial.

84. Ms. Cornia is entitled to double damages under RCW 49.52.070.

85. Ms. Cornia is also entitled to recover her attorneys' fees and costs.

COMPLAINT – Page 12

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

**RESERVATION OF RIGHTS**

Plaintiff respectfully reserves the right to amend and supplement this Complaint.

**V. PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

A. For an award of economic damages including past and future lost compensation against Defendant in an amount to be proven at trial;

B. For an award of economic damages under RCW 49.48 and RCW 49.52;

C. For an award of Plaintiff's attorney's fees and costs incurred to the extent allowed by the WLAD; RCW Chapters 49.48, 49.52, and applicable law;

D. For an award of pre-judgment and post-judgment interest at the highest rate allowable by law until paid in full;

E. For emotional distress damages in an amount to be proven at trial;

F. For damages to Plaintiff's reputation in an amount to be proven at trial; and

G. For such other and further relief as the Court deems just and equitable.

DATED this 14th day of July, 2021.

McNAUL EBEL NAWROT & HELGREN PLLC

By  s/ Matthew J. Campos
  Matthew J. Campos, WSBA No. 40777
  Avi J. Lipman, WSBA No. 37661

600 University Street, Suite 2700
Seattle, Washington 98101
Telephone (206) 467-1816
mcampos@mcnaul.com
alipman@mcnaul.com

Attorneys for Plaintiff Allison Cornia

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

| | |
|---|---|
| ALLISON CORNIA,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>CROSSOVER MARKET LLC,<br><br>　　　　　　　Defendant. | No.<br><br>SUMMONS (20 DAYS) |

**THE STATE OF WASHINGTON TO: CROSSOVER MARKET LLC**

　　　A lawsuit has been started against you in the above-entitled Court by Plaintiff Allison Cornia. Plaintiff's claim is stated in the written complaint, a copy of which is served upon you with this summons.

　　　In order to defend against this lawsuit, you must respond to the complaint by stating your defense in writing, and by serving a copy upon the person signing this summons within twenty (20) days after the service of this summons, excluding the day of service, or a default judgment may be entered against you without notice. A default judgment is one where Plaintiff is entitled to what it has asked for because you have not responded. If you serve a notice of appearance on the undersigned person, you are entitled to notice before a default judgment may be entered.

　　　If not previously filed, you may demand that the Plaintiff file this lawsuit with the Court. If you do so, the demand must be in writing and must be served upon the person

SUMMONS (20 DAYS) – Page 1

signing this summons. Within fourteen (14) days after you serve the demand, the Plaintiff must file this lawsuit with the Court or the service on you of this summons and complaint will be void.

If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.

THIS SUMMONS is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State of Washington.

DATED this 14th day of July, 2021.

                McNAUL EBEL NAWROT & HELGREN PLLC

                By   s/ Matthew J. Campos
                      Matthew J. Campos, WSBA No. 40777
                      Avi J. Lipman, WSBA No. 37661

                600 University Street, Suite 2700
                Seattle, Washington 98101
                Telephone (206) 467-1816
                mcampos@mcnaul.com
                alipman@mcnaul.com

                Attorneys for Plaintiff Allison Cornia

SUMMONS (20 DAYS) – Page 2

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816



**CAPITOL SERVICES**

Capitol Corporate Services, Inc.
PO Box 1831
Austin, TX 78767
Phone: (800) 345-4647  Fax: (800) 432-3622
rassop@capitolservices.com

# Service Of Process Transmittal Notice

| | | |
|---|---|---|
| BRIAN BAUCHER<br>TRILOGY<br>401 CONGRESS AVE STE 2650<br>AUSTIN TEXAS 78701-3708 | **Date Processed:** | 07/15/2021 |
| | **Completed By:** | CONNIE HOGAN |
| | **Delivery Method to Client:** | FEDEX 2 DAY LETTER |
| | **Tracking Number:** | 176774814809 |

Enclosed please find legal documents received on behalf of the client named below. These documents are being forwarded in accordance with your instructions.

| Date / Time Received | Transmittal # | Delivered to Agent by |
|---|---|---|
| 07/15/2021  1:30 PM in WASHINGTON | WA-207651 | PROCESS SERVER |

| **With Regard to Client** |
|---|
| CROSSOVER MARKET LLC |

| **Title of Case or Action** |
|---|
| ALLISON CORNIA VS. CROSSOVER MARKET LLC |

| **Case Number** | **Type of Document Served** |
|---|---|
| NONE | COMPLAINT/PETITION |

| **Court Name** |
|---|
| SUPERIOR COURT OF WASHINGTON FOR KING COUNTY |

| **Note** |
|---|
| |

1-207651F